IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ARTHUR GRIGGS, # 129 969,      )
                                     )
      Plaintiff,         )
                                     )
v.                              )  CIVIL ACTION NO. 1:12-00726-CG-N
                                     )
TONY PATTERSON,        )
                                     )
      Defendant.       )

REPORT AND RECOMMENDATION

This action pursuant to 42 U.S.C. § 1983 by an Alabama prison inmate, Arthur Griggs

("Griggs), proceeding in *forma pauperis,* has been referred to the undersigned Magistrate Judge

for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.2(c)(4).  At all relevant times, Griggs has been incarcerated in the custody of the State of

Alabama at the Alabama Department of Corrections' ("ADOC") Holman Correctional Facility in

Atmore, Alabama.[1]    Griggs claims that his Eighth and Fourteenth Amendments rights were

violated by the overcrowded conditions of the Alabama prison system and, more specifically, by

the unconstitutional conditions existing at Holman. For the reasons explained below, it is

recommended that summary judgment be granted in favor of the sole remaining defendant, Tony

Patterson, Warden of Holman Correctional Facility, with this action being dismissed with

prejudice.

    I.  PROCEEDINGS

---

[1] Griggs is currently serving a life sentence without the possibility of parole ("LWOP") for
Robbery I.  (Doc. 23 at 3; Doc. 23-1).  The date of his conviction has not been provided but Griggs has
stated that he has been at Holman since 2002. (Doc. 27 at 2).

Griggs initially filed this action on January 24, 2012, asserting claims arising in the Middle and Southern Districts of Alabama.  *See* <u>Arthur Lee Griggs v. Kim Thomas, et al.</u>, Civil Action No. 12-0045-CG-N.   In his complaint, he named several defendants who have Montgomery, Alabama addresses, namely, Commissioner Kim Thomas, Alabama Attorney General Luther Strange, and Governor Robert Bentley. Montgomery is located in Montgomery County in the Middle District of Alabama.  Griggs also named Defendant Tony Patterson, the Warden of Holman Correctional Facility ("Holman") where plaintiff is incarcerated.  Holman is located in Atmore, Alabama, Escambia County, which is in the Southern District of Alabama. Pursuant to a Report and Recommendation entered on August 27, 2012 (Doc. 6), which was adopted by the District Court on September 28, 2012 (doc. 7), this action was transferred to the United States District Court for the Middle District of Alabama on the grounds that "plaintiff focuses his claims on what the defendants who are located in Montgomery have or have not done as having created the conditions at Holman and system-wide [and] it appears that most of defendants are located in the Middle District where policy and laws are made."

Pursuant to a Report and Recommendation entered in the United States District Court for the Middle District of Alabama on October 4, 2012, and adopted by that Court on November 29, 2012, plaintiff's claims against the Montgomery defendants, Commissioner Kim Thomas, Alabama Attorney General Luther Strange, and Governor Robert Bentley, were dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and the action was transferred back to this Court to address the remaining claims.  (Doc. 13 at 344-353 and 365).  The action was assigned a new case number and restyled as set forth above.  The sole remaining claims in this action are Griggs' claims against Defendant Tony Patterson that his Eighth and Fourteenth

Amendment rights are being violated by the overcrowded conditions of the Alabama prison system, specifically by unconstitutional conditions existing at Holman Correctional Facility.

On April 4, 2013, Warden Tony Patterson,[2] the only remaining defendant, filed his Answer (doc. 22) and Special Report (doc. 23), as required by the Court's Order dated January 4, 2013 (doc. 15). On April 10, 2013, the Court entered an Order (doc. 24) converting defendant's Answer and Special Report into a Motion for Summary Judgment.[3] Griggs has now responded (doc. 27) to the motion and it is now taken under submission.

## II. SUMMARY OF THE ALLEGATIONS AND FACTUAL BACKGROUND

A review of the record reveals that the following allegations of the parties are material to the issues addressed in this Report and Recommendation. As a result of his conviction for Robbery I, Griggs is serving a life sentence without the possibility of parole ("LWOP") in the custody of the Alabama Department of Corrections ("ADOC") at Holman. (Doc. 23 at 3). He has been an inmate at Holman since 2002. (Doc. 27 at 2). In the main body of his complaint, Griggs alleges that his "rights guaranteed by the Eighth and Fourteenth Amendment[s] to the United States Constitution is being [sic] violated because of the overcrowding conditions of the Alabama Department of Corrections and Holman Prison." (Doc. 13 at 7). Griggs then refers the Court to the "Attached Affidavit" which purports to contain the factual basis for his complaint. (*Id.* at 7 and 12-13). The undersigned quotes the entirety of Griggs' allegations in this action, as set forth in his attached affidavit:

---

[2] At all relevant time, Defendant Tony Patterson was the Warden at Holman Correctional Facility; however, he has since retired. (Doc. 23 at n. 1).

[3] On April 30, 2013, Griggs filed a motion to dismiss without prejudice or, alternatively, for a 60 day continuance (doc. 25). As grounds for the motion, Griggs stated that he was "confined to disciplinary segregation unit of the prison with no access to legal material." (Doc. 25 at ¶ 1). The motion was granted on April 30, 2013, to the extent that Griggs sought an extension of time to respond. (Doc. 26).

My name is Arthur L. Griggs # 129909, I am over 21 years of age, competent to testify and have personal knowledge of the matters stated herein. I am currently confined in the Alabama Department of Corrections assigned to Holman Prison in Atmore, Alabama in the County of Escambia. My Rights guaranteed by the Eighth and Fourteenth Amendment[s] to the United States Constitution is being violated due to the Overcrowding Conditions of the Alabama Department of Corrections. Holman Prison is grossly, at the writing of this statement, Holman prison [sic] is 143% of design capacity, which has created a very hostile living environment causing violent assaults on prisoners by other prisoners and by prison guards, and the denial of my basic fundamental Constitutional rights to adequate Food, Clothing, Shelter, Medical Care, Access to Court, Personal Safety, Sanitation, Rehabilitation, and the opportunity for Release. The entire Alabama Department of Corrections is 190% of capacity, Understaffed, Underfunded and is the direct cause of the Constitutional violations complained of herein. The conditions of confinement in the Alabama Prison System, including here at Holman is so grossly inadequate and violates the Eighth and Fourteenth Amendment[s] to the United States Constitution. Holman Prison houses numerous of [sic] mentally ill Prisoners that are not being monitored; the ventilation in the house unit is inadequate with unbearable tempatures [sic] in the Summer and Winter; the Food is often served Cold and lacks the essential nutrition, windows are broke out the dorms [sic], leaking Roofs, overcrowded dorms that constantly causes violent assaults, constant cases of Staph, lice, the law Library sits in a 8' x 12' room to accommodate 600+ Prisoners, the medical staff at Holman is so unprofessional and understaffed causing prisoners to suffer even to the point of death. The Alabama Department of Corrections is aware of the Overcrowding conditions of its Prison System, and has openly admitted that Alabama Prison System is operating in violation of the United States Constitution, but yet has fail to take any step to correct the Unlawful Conditions, in violation of my Constitutional Right to be free from Cruel and Unusual Punishment.

(Doc. 13 at 12-13).[4] Griggs seeks $10,000,000 in punitive damages as well as unspecified injunctive and declaratory relief. (*Id.* at 10).

---

[4] On April 19, 2012, Griggs filed a motion for class certification and for appointment of counsel (doc. 13 at 25-26) together with a number of affidavits that are identical to the affidavit filed by Griggs but signed by other inmates (doc. 13 at 122-334). This motion was addressed by the United States District Court for the Middle District of Alabama in the Report and Recommendation entered on October 4. 2012 (doc. 13 at 344-353), as follows:

With respect to claims Plaintiff seeks to litigate regarding the conditions to which other inmates at Holman are subjected, the court notes he lacks standing to assert the constitutional rights of other persons. McGowan v. Maryland, 366 U.S. 420, 429 (1961), *citing* United States v. Raines, 362 U.S. 17, 22 (1960) ("[A] litigant may only assert his own constitutional rights or immunities."); Schlesinger v. Reservists Comm.to Stop the War, 418 U.S. 208, 218-19 (1974)

(Continued)

In his Special Report and Answer (docs. 22-23), Defendant Tony Patterson denies that Griggs' constitutional rights have been violated[5] and asserts various defenses, including

_____

(plaintiff must assert a legally cognizable injury in fact before federal courts have jurisdiction); Saladin v. City of Milledgeville, 812 F.2d 687, 690 (11th Cir. 1987); Harris v. McRae, 448 U.S. 297, 320 (1981). While a pro se inmate may "plead and conduct" his own claims in federal court, 28 U.S.C. § 1634, he has no concomitant right to litigate the claims of other individuals. The competence of a layman is "clearly too limited to allow him to risk the rights of others." Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975); Hummer v. Dalton, 657 F.2d 621 (4th Cir. 1981); Ethnic Awareness Org. v. Gagnon, 568 F. Supp. 1186 (E.D. Wis. 1983); Inmates, Washington Cnty. Jail v. England, 516 F. Supp. 132 (E.D. Tenn. 1980), aff'd, 659 F.2d 1081 (6th Cir. 1981).

(Doc. 13 at 351, n. 3). The Report and Recommendation was adopted as the opinion of the District Court on November 29, 2012. (Doc. 13 at 365).

[5] Defendant Patterson, based upon his own Affidavit testimony (Exh. 3) and that of Gary Hetzell, Warden III at Holman (Exh. 4), specifically asserts the following:

No unconstitutional condition exists at Holman. No hostile or violent environment is created due to the crowding at Holman. (Exhibits 3 & 4). Since the current Warden's arrival at Holman, he has not noticed a particularly hostile living environment beyond what one would normally expect when hundreds of convicted felons are living in one space and the natural tension that arises out of any situation involving inmates and officers. (Exhibit 4). At Holman, no inmates are denied adequate food, clothing, shelter, medical care, or access to courts. A trained security staff is available to help provide personal safety. The facility is cleaned on a daily basis to ensure proper sanitation. Programs are offered to inmates in order to rehabilitate the population that will eventually reach their end of sentence. (Exhibits 3 & 4). It should be noted that the Plaintiff is LWOP, and will not be eligible for release. (Exhibit 2). Wardens have no authority over the release of inmates. Staffing is organized in such a way that all security needs are met. (Exhibit 4). A mental health staff is available to counsel inmates and attend to special needs of mentally ill inmates. The ventilation at Holman is adequate for the needs of the institution. (Exhibits 3 & 4). In fact, proper air flow is supplied year round, and the heating system has recently been upgraded and has recently passed state certification. (Exhibit 3). All food is prepared in accordance with the state dietician to ensure that all nutrition needs of inmates are met, and all food is served at the appropriate temperatures. (Exhibits 3 & 4). From time to time, just like every building, maintenance issues will arise, such as a leak or a broken window, but the maintenance staff at Holman regularly inspects the facility, and issues are promptly fixed. The current Warden has no knowledge of a problem with staph infections or lice, and any inmate with either condition would immediately be taken for treatment to the contracted medical staff. The law library at Holman is adequate to meet the needs of the inmate population. (Exhibit 4).

(Doc. 23 at 3-4).

plaintiff's lack of standing, absolute immunity in his official capacity and qualified immunity in his individual capacity. (Doc. 23 at 1-2). Patterson argues that Griggs is not entitled to monetary damages because he "fails to allege any injury, much less a *de minimus* injury, and, therefore, any damages are prohibited under the [Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(e)[6]]". (*Id.* at 2; Doc. 22 at ¶ 11). Patterson also asserts that Griggs is not entitled to either declaratory or injunctive relief.

In his response in opposition to summary judgment, Griggs merely reasserts the same general allegations concerning the conditions of his confinement. (Doc. 27). For example, he asserts:

> [T]he unconstitutional condition caused by the overcrowding at Holman Prison and the entire Alabama Department of Corrections, denies the Plaintiff adequate food, clothing, shelter, medical care, access to Courts, personal safety, a sanitary environment, Rehabilitation and the opportunity for release.

(Doc. 27 at 1). Similarly, he claims to have "personally witnessed the constant violence at Holman prison due to the gross overcrowding of the prison, especially in the Summer Months, because of the unbearable heat, due to the inadequate ventilation and the fact that Defendants have two men living in a 6' by 8' area in a [sic] open Dormitory that houses 114 inmates [and] [a]t least 3 times a week a [sic] inmate is seriously injured by fighting one another; stabbing one another or at the hands of correctional officers." (*Id.* at 2). Griggs also asserts that "there is only one correctional officer monitoring the 114 inmates and the majority of the time that Correctional [sic] is asleep; inexperience [sic]; not properly trained or turn [sic] a blind eye to the

---

[6] Section 1997e(e) of the Prison Litigation Reform Act (PLRA) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e).

violence." (*Id.*).  Griggs concedes that he has not personally suffered any violence.  (*Id.*).  He also asserts that "there is always an epidemic of Staph infections; stomach virus; lice; rashes and other diseases caused by overcrowding conditions."  (*Id.*).  He also complains that "[t]he food is always poorly prepared and is served cold and not cooked properly, for instance the meat is always served half done; the bread has raw flour on the inside of the bread; the Milk is always sour, the eating utensil and trays have food particles and grease on them and . . . their [sic] are big roaches; Rats and Knats everywhere in the kitchen."  (*Id.* at 2-3).  Griggs also asserts that numerous mentally ill inmates are not being treated and are committing violent acts in the general population.  (*Id.* at 3).  Finally, Griggs asserts the following claims regarding the Holman's Law library:

> The Prison Law library sits in 12' x 24' room [sic] with two computers and room to accommodate 8 people for a population of 600 plus inmates.  The Library is often overcrowded causing tempers to flare resulting in fights and arguing in the library; the computers are not currently updated with Supreme Court of the United States decisions; Alabama decisions and the proper forms to adequately file meaningful pleadings, . . .; the Library does not contain self-help books and the Computer does not have 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10th Circuit Cases that would aid inmates in developing issues and showing conflicts and inconsistencies among the Circuits to successfully petition the Supreme Court.  The Library does not have clerks that are qualified to assist inmates. . .

(*Id*. at 3-4).

    III.    LEGAL STANDARD

    A.    *Sufficiency of the Pleadings – <u>Twombly</u> Standard.*

Although Patterson's Answer and Special Report in this case were converted by the Court into a motion for summary judgment (doc. 24) and taken under submission as such, an examination related to the sufficiency of the pleadings in this case is appropriate.   In <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court set forth the following standard regarding a court's determination of the sufficiency of pleading:

Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citation omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [citation omitted]. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. at 555. The Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.

The Supreme Court reinforced the Twombly standard in Ashcroft v. Iqbal, 556 U.S. 662, 677-80 (2009). The Court reiterated that a claim is insufficiently pled if it offers only "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'." Iqbal, 556 U.S. at 678, *quoting* Twombly, 550 U.S. at 557. The Iqbal Court explained:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

Iqbal, 556 U.S. at 678-79 (citation and internal punctuation omitted). *See also*, Phillips v. County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008)("After Twombly, it is no longer

sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct'."), *quoting* Twombly, 550 U.S. at 553, n. 8. *See also*, Sinaltrainal v. Coca-Cola Co., 2009 WL 2431463 (11th Cir. August 11, 2009)("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss [*citing* Iqbal, 129 S.Ct. at 1949] [and] [t]he well-pled allegations must nudge the claim 'across the line from conceivable to plausible'" [*quoting* Twombly, 550 U.S. at 570]").

      B. *Summary Judgment Standard*.

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the plaintiff is entitled to a verdict'." Kernel Records Oy v. Mosley, 694 F.3d 1294, 1300 (11th Cir. 2012), *quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). *See also* Powell v. Gentiva Health Services, Inc., 2014 WL 554155, *4 (S.D. Ala., February 12, 2014) ("The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). "Once the movant adequately supports [his] motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." *Id.*, *quoting* Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010). "[W]hen the moving party fails to demonstrate the absence of a genuine issue of material fact, the motion should be denied." *Id.*, *citing* Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970); Clark v. Coats & Clark, Inc., 929 F.2d 604, 606–08 (11th Cir. 1991).

The Eleventh Circuit also held in Kernel Records Oy:

> "Although all justifiable inferences are to be drawn in favor of the nonmoving party," Baldwin County v. Purcell Corp., 971 F.2d 1558, 1563–64 (11th Cir.

1992)(quotation omitted), "inferences based upon speculation are not reasonable," Marshall v. City of Cape Coral, 797 F.2d 1555, 1559 (11th Cir. 1986). Evidence that is "merely colorable, or is not significantly probative" of a disputed fact cannot satisfy a party's burden, *see* Anderson, 477 U.S. at 249–50, 106 S.Ct. 2505 (citation omitted), and a mere scintilla of evidence is likewise insufficient, *see* Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004).

*Id*. at 1301.

"In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Matthews v. City of Mobile, 2013 WL 5883833, *2 (S.D. Ala., October 31, 2013), *quoting* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) *cert denied*, 507 U.S. 911 (1993) (internal citations and quotations omitted).  However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004), *cert denied*, 534 U.S. 1081 (2005).

C.  *Section 1983 Liability for Violations of the Eighth and Fourteenth Amendments.*

Griggs alleges violations of both the Eighth and Fourteenth Amendments of the United States Constitution against Defendant Patterson pursuant to 42 U.S.C. § 1983 ("Section 1983).  Actions in federal court to address and remedy a violation of the Constitution by a state actor are brought through Section 1983 which provides that:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  For the purposes of this section, any Act of Congress applicable exclusively to the

District of Columbia shall be considered to be a statute of the District of Columbia."

42 U.S.C. § 1983.   In order  "[t]o sustain a cause of action based on section 1983, [a plaintiff] must establish two elements: (1) that [he] suffered a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States, and (2) that the act or omission causing the deprivation was committed by a person acting under color of law." Wideman v. Shallowford Community Hosp., Inc., 826 F.2d 1030, 1032 (11th Cir. 1987) (internal quotations and citation omitted).

(1)      Eighth Amendment.

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. Amend. VIII.[7] To demonstrate a violation of an Eighth Amendment right in a section 1983 prison conditions action, a plaintiff must prove three elements:  (1) "a condition of confinement that inflicted unnecessary pain or suffering"; (2) "the defendant's deliberate indifference to that condition;" and (3) "causation."  LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164 (1994)(internal quotation marks and citations omitted).  "The wrong in Eighth Amendment cases is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiffs' injuries." 995 F.2d at 1538-39.

Thus, the substantive elements of an Eighth Amendment claim are generally comprised of an objective component in the required showing of an unconstitutional "condition of

_____

[7] The Eighth Amendment applies to the states through the Fourteenth Amendment. Rhodes v. Chapman, 452 U.S. 337, 344–45 (1981).

confinement," as well as a subjective component in the required showing of "deliberate indifference" to that condition.  It is only when both objective and subjective components are satisfied that a violation of the Eighth Amendment may be found.  *See, e.g.,*  Farmer v. Brennan, 511 U.S. 825, 834 (1994).   The Eleventh Circuit has also addressed the issue as follows:

> In our circuit, to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence. Townsend v. Jefferson County, 601 F.3d 1152, 1158 (11th Cir. 2010); *see also* Chandler [v. Crosby, 379 F.3d 1278, 1290 n. 21 (11th Cir. 2004)]. That is, the evidence must demonstrate that "with knowledge of the infirm conditions, [the official] knowingly or recklessly declined to take actions that would have improved the conditions." LaMarca, 995 F.2d at 1537. A prison official's deliberate indifference is a question of fact which we review for clear error. *See* Farmer, 511 U.S. at 842 []; Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007); *1313 Fed.R.Civ.P. 52(a). "Whether a prison official had the requisite knowledge of a substantial risk is ... subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842, 114 S.Ct. at 1981 (internal citations omitted).

Thomas v. Bryant, 614 F.3d 1288, 1312-13 (11th Cir. 2010).

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, amounting to the infliction of "unnecessary pain and suffering upon the prisoner."  LaMarca, 995 F.2d at 1535. "The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency."  Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), *quoting* Hudson v. McMillan, 503 U.S. 1, 9 (1994) and Estelle v. Gamble, 429 U.S. 97, 103 (1976))(quotation marks omitted).  This standard requires that the alleged deprivation be "objectively, sufficiently serious."  Farmer, 511 U.S. at 833, *quoting* Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The deprivation also must amount to "the denial of 'the minimal civilized measure of life's necessities[.]'"  Farmer, 511 U.S. at 834, *quoting* Rhodes v.

Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). The "basic necessities of life" have been recognized to be "reasonably adequate food, clothing, shelter, sanitation, and necessary medical attention." Newman v. State of Alabama, 559 F.2d 283 (5th Cir.), *cert. denied*, 428 U.S. 915 (1978). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency, but must be balanced against competing penological goals." LaMarca, 995 F.2d at 1535 (internal quotations and citations omitted).

(2)    Fourteenth Amendment.

The Due Process Clause protects against deprivations of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The Supreme Court has recognized two types of constitutional protection provided by this clause: procedural due process and substantive due process. *See* McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994).

"The substantive due process clause is rarely implicated by governmental action." Shultz v. Wells, 2010 WL 1141452, *5 (M.D. Ala. 2010). "Officials acting under the color of state law violate the substantive component of the Due Process Clause only when their conduct 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" Peterson v. Baker, 504 F.3d 1331, 1336 (11th Cir. 2007), *quoting* County of Sacramento v. Lewis, 523 U.S. 833 (1998). "Procedural due process rules, on the other hand, protect an individual from the unjustified deprivation of life, liberty, or property." Walker v. Sun Trust Bank of Thomasville, GA, 363 Fed. Appx. 11, 17 (11th Cir. 2010) (unpublished), *citing* Carey v. Piphus, 435 U.S. 247, 259 (1978).

With this legal framework in mind, the Court now turns to the defendants' specific grounds in support of the motion for summary judgment.

IV.  ANALYSIS

A.      *Plaintiff's Standing.*

Patterson argues that this Court lacks jurisdiction over "[Griggs'] bare claims relating to crowding or any other condition at Holman" because he lacks standing to assert these claims. (Doc. 23 at 4).   Griggs responds by asserting only that he "does not believe that the Eighth Amendment requires that he has to suffer violence before seeking a remedy for the overcrowding-violent condition at Holman."  (Doc. 27 at 2).  Griggs has, therefore, conceded that he has not been the victim of any violence or personally suffered any other injury.  His general allegation that he "has personally witnessed the constant violence at Holman Prison" is insufficient to establish that he is likely to become a victim of violence or suffer any injury and does not create a genuine issue of material fact sufficient to preclude summary judgment in this case.

The Supreme Court has held that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), *citing* , Allen v. Wright, 468 U.S. 737, 751 (1984).  The Supreme Court further held:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, *see id.*, [468 U.S.] at 756, 104 S.Ct., at 3327; Warth v. Seldin, 422 U.S. 490, 508, [](1975); Sierra Club v. Morton, 405 U.S. 727, 740–741, n. 16, [](1972); and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " Whitmore, supra, 495 U.S., at 155, [] (*quoting* Los Angeles v. Lyons, 461 U.S. 95, 102, [] (1983)). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41–42, [] (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.*, at 38, 43, [].

504 U.S. at 560-61. The Supreme Court also explained that "[b]y particularized, we mean that the injury must affect the plaintiff in a personal and individual way." 504 U.S. at 560-61, n.1. *See also,* Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1328 (11th Cir. 2013)("[A] plaintiff must satisfy three requirements to have standing under Article III of the Constitution: (1) "injury-in-fact"; (2) "a causal connection between the asserted injury-in-fact and the challenged action of the defendant"; and (3) "that the injury will be redressed by a favorable decision.")(*quoting* Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001)(internal quotation marks omitted), *citing* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

The Supreme Court specifically addressed the parties' respective burden in this matter as follows:

> The party invoking federal jurisdiction bears the burden of establishing these elements. [Citations omitted] Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. [Citations omitted]*See* Lujan v. National Wildlife Federation, 497 U.S. 871, 883–889, [] (1990); Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 114–115, and n. 31, [] (1979); Simon, *supra*, 426 U.S., at 45, n. 25, []; Warth, supra, 422 U.S., at 527, and n. 6, [] (Brennan, J., dissenting). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." National Wildlife Federation, supra, 497 U.S., at 889, []. ***In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts***," Fed.Rule Civ.Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial." Gladstone, *supra*, 441 U.S., at 115, n. 31,[].

Lujan, 504 U.S. at 561. The Eleventh Circuit elaborated with respect to injunctive relief sought by a plaintiff in a § 1983 action as follows:

The "injury-in-fact" demanded by Article III requires an additional showing when injunctive relief is sought. In addition to past injury, a plaintiff seeking injunctive relief "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1284 (11th Cir. 2001). Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." Shotz, 256 F.3d at 1081; Wooden, 247 F.3d at 1284 (*citing* City of Los Angeles v. Lyons, 461 U.S. 95, 102, [] (1983)).

Houston, *supra,* 733 F.3d at 1328-29.

In this case, Griggs has failed to allege any personal injury with regard to any of his claims. He has not alleged any physical injury. At most, he claims to have "witnessed" the conditions about which he complains and those conditions are themselves described only in general terms. (Doc. 27 at 2). He has, therefore, failed to establish that there is any causal connection between the alleged overcrowding at Holman and any "injury in fact" suffered by the plaintiff. In addition, crowding of a prison does not, standing alone, create a constitutional violation. *See e.g.* Brown v. Plata, 131 S.Ct. 1910, 1959, 2011 WL 193607, * 41 (May 23, 2011)(Alito, dissenting)("The Eighth Amendment imposes an important – but limited—restraint on state authority in this field [and] the current population level [in a prison] is not itself unconstitutional."), *citing* Rhodes v. Chapman, 452 U.S. 337, 347 (1981)(The Eighth Amendment prohibits prison officials from depriving inmates of 'the minimal civilized measure of life's necessities" and no such deprivation based on "double-celling" the inmates was established.). Consequently, Griggs' lacks standing to assert any claims alleged to arise from overcrowding at Holman.

## B. *Plaintiff's Claims Do Not Satisfy Twombly.*

Although Patterson's Answer and Special Report in this case were converted by the Court into a motion for summary judgment (doc. 24) and taken under submission as such, it does

not alter the fact that Griggs' claims are insufficient under the standards applicable to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In assessing the merits of the complaint under Rule 12(b)(6), which questions the legal sufficiency of a complaint, the court must assume that all the factual allegations set forth in the complaint are true. *See e.g.*, United States v. Gaubert, 499 U.S. 315, 327 (1991); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir.1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g.*, Brower v. County of Inyo, 489 U.S. 593, 598 (1989). Rule 8(a)(2) of the Federal Rules of Civil Procedure generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). Rather, "(f)actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555; *see also* Watts v. Fla. Nat'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007). "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" Watts, 495 F.3d at 1296.

Here, Griggs has alleged no specific personal or physical injury arising from the conditions of his confinement. He has also failed to allege that Patterson is responsible for the overcrowding upon which plaintiff predicates his alleged constitutional violations. He alleges, in sum, that he has been subjected to cruel and unusual punishment because of the general conditions of his confinement and that Patterson was aware of the overcrowding "but has yet to do anything to remedy the problems." (Doc. 27 at 3). However, because he has alleged no

actual injury, he "must show that he is incarcerated under conditions posing ***a substantial risk of serious harm***" in order to state a viable claim against Patterson for a violation of the Eighth Amendment.    Farmer v. Brennan, 511 U.S. 825, 834 (1994)(emphasis added), *citing* Helling v. McKinney, 509 U.S. 25, 35 (1993); *see also* Wilson v. Seiter, 501 U.S. 294, 298 (1991)("The Constitution . . . does not mandate comfortable prisons, and only those deprivations denying 'the minimal civilized measure of life's necessities', are sufficiently grave to form the basis of an Eighth Amendment violation" and required the inmate to show deliberate indifference on part of prison officials.);  Rhodes, 452 U.S. at 347-48 (The district court's conclusion that "double celling [] constitutes cruel and unusual punishment" was held to be "insupportable" because it was predicated on "considerations [which] fall far short in themselves or proving cruel and unusual punishment, for there is no evidence that double celling under these circumstances either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment.")[8].  "[T]he pleading standard Rule 8 announces does not require

---

[8] The Supreme Court in Rhodes analyzed the evidence presented in that case and specifically observed, in pertinent part:

> The double celling made necessary by the unanticipated increase in prison population did not lead to deprivations of essential food, medical care, or sanitation. Nor did it increase violence among inmates or create other conditions intolerable for prison confinement. [Citation to underlying case omitted]. Although job and educational opportunities diminished marginally as a result of double celling, limited work hours and delay before receiving education do not inflict pain, much less unnecessary and wanton pain; deprivations of this kind simply are not punishments. We would have to wrench the Eighth Amendment from its language and history to hold that delay of these desirable aids to rehabilitation violates the Constitution.

> The five considerations on which the District Court relied also are insufficient to support its constitutional conclusion. The court relied on the long terms of imprisonment served by inmates []; the fact that [the prison] housed 38% more inmates than its "design capacity"; the recommendation of several studies that each inmate have at least 50–55 square feet of living quarters; the suggestion that double-celled inmates spend most of their time in their cells with their cellmates; and the fact that double celling at [the prison] was not a temporary condition. [Citation to underlying case omitted].   These general considerations fall far short in

(Continued)

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678, *quoting* <u>Twombly</u>, 550 U.S. at 555. Plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." <u>Twombly,</u> 550 U.S. at 570. Griggs' factual allegations in this case amount to no more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" prohibited under <u>Twombly</u> and <u>Ashcroft</u>. He has failed "to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. He has, therefore, failed to state a viable constitutional claim against Patterson.

C. *Defendant is entitled to Summary Judgment.*

Griggs' burden is even greater under Rule 56 of the Federal Rules of Civil Procedure because "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." <u>Ellis v. England</u>, 432 F.3d 1321, 1326 (11th Cir. 2005). Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

---

themselves or proving cruel and unusual punishment, for there is no evidence that double celling under these circumstances either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment. [Footnote omitted]. At most, these considerations *349 amount to a theory that double celling inflicts pain. [Footnote omitted]. Perhaps they reflect an aspiration toward an ideal environment for long-term confinement. But the Constitution does not mandate comfortable prisons, and prisons of [this] type, which house persons convicted of serious crimes, cannot be free of discomfort. Thus, these considerations properly are weighed by the legislature and prison administration rather than a court.

452 U.S. at 348-49.

The basic issue before this Court on Patterson's motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-252.

In this case, Patterson has the burden of showing the absence of a genuine issue as to any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Wallace v. Smith, 297 Fed.Appx. 915, 915-16 (11th Cir. 2008); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993); Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 989-999 (11th Cir. 1992). "For an issue on which the non-moving party bears the burden of proof, the moving party need only show "***that there is an absence of evidence to support the non-moving party's case***." Wallace, 297 Fed.Appx at 916, *quoting* Fitzpatrick, 2 F.3d at 1115-16 (emphasis in original). Patterson has supported his motion with affidavit testimony, his own and that of the present Warden, Gary Hetzel, that no hostile or violent environment exists at Holman due to overcrowding (doc. 23-3 at 2; doc. 23-3 at 1); no inmates is denied adequate food, clothing, shelter, medical care or access to the courts (*Id.*); a trained security staff is available to provide personal safety (*Id.*); the facility is cleaned daily (*Id.*); rehabilitation programs are offered to inmates who will eventually be released (*Id.*)[9]; a mental health staff is available to counsel inmates and attend to the special needs of mentally ill inmates (*Id.*)[10]; the ventilation system at Holman is adequate to provide proper air flow year round and the recently upgraded heating system has passed state certification (*Id.*); all food is prepared "according to a master menu of the State of Alabama based on the nutritional guidelines of the state" to ensure that all nutritional needs of inmates are

---

[9] Griggs does not dispute that he is serving Life Without Possibility of Parole (LWOP), and will therefore not be eligible for release, or that the Warden has no authority over the release of inmates.

[10] Griggs has not alleged that he suffers from any mental illness and been denied treatment.

met, and all food is served at the appropriate temperature (*Id*.); maintenance staff regularly inspect the Holman facility and promptly address any maintenance needs (*Id*.); the Warden has no knowledge of any problem with Staph infections or lice and asserts that an inmate with any such condition would be immediately taken for treatment to the contracted medical staff (*Id*.); and the law library is adequate to meet the needs of the inmates (*Id*.)[11]. Patterson has also established that Griggs has not alleged any facts that would preclude summary judgment on any claim.

Although Griggs "need not await a tragic event" before seeking relief, he must at least show that a condition of his confinement "'pose[s] an unreasonable risk of serious damage to his future health' or safety." Chandler v. Crosby, 379 F.3d 1278, 1288-89 (11th Cir. 2004), *citing* Hudson v. McMillian, 503 U.S. 1, 8 (1992) and Helling v. McKinney, 509 U.S. 25, 33 (1993). Griggs has failed to identify any "extreme" conditions as required by Chandler, and has not shown any specific injuries he sustained or is likely to sustain in the near future. Moreover, he has failed to allege any action or inaction by Defendant Patterson that could be construed as causing any inhuman treatment or injury to Griggs personally. His vague allegation that "[t]he Defendants are aware of these problems and has [sic] been for years, but has [sic] yet to do anything to remedy the problems" is insufficient to establish either the existence, or Patterson's knowledge, of any substantial danger existing as to Griggs.

For the above stated reasons, there exists no material issue of fact and Patterson has established that he is entitled to summary judgment as to Griggs' constitutional claims. Defendant's motion for summary judgment is, therefore, due to be granted and the action dismissed.

---

[11] Griggs has not alleged that he has ever been denied access to the courts.

D. *Defendant is entitled to Eleventh Amendment Immunity.*

In addition, to the extent Griggs asserts a claim against Defendant Patterson in his official capacity, such claim must be considered to be against the State itself and is barred by the immunity afforded pursuant to the Eleventh Amendment. In <u>Miller v. King</u>, 384 F.3d 1248, 1259-60 (11th Cir. 2004), although relating to the claims of a prison inmate in Georgia, the Court summarized the preclusive effect of the Eleventh Amendment, an effect similarly applicable in Alabama, as follows:

> When filing a suit under 42 U.S.C. § 1983, a prisoner is limited with respect to whom he or she may sue. A plaintiff may not bring a § 1983 action for monetary damages against the State of Georgia, the [Georgia Department of Corrections (GDOC)], or state officials in their official capacities. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71, [] (1989); <u>Edwards v. Wallace Community College</u>, 49 F.3d 1517, 1524 (11th Cir.1995). <sup>FN9</sup> Further, the Eleventh Amendment bars a prisoner's § 1983 action against the State of Georgia and the GDOC for both monetary damages and injunctive relief. <u>Stevens v. Gay</u>, 864 F.2d 113, 114-15 (11th Cir. 1989). Accordingly, we affirm the grant of summary judgment to the State of Georgia and the GDOC on Miller's § 1983 claims.
>
> > FN9. In <u>Edwards</u>, we explained that "[a] state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable; but a state official sued in his official capacity is a person for purposes of § 1983 when prospective relief, including injunctive relief, is sought." 49 F.3d at 1524 (*citing* <u>Will</u>, 491 U.S. at 71, n. 10.
>
> A prisoner, however, may bring a § 1983 action against state officials in their official capacities, but only for prospective, injunctive relief. <u>Will</u>, 491 U.S. at 71 n. 10 [] (*citing* <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n. 14 [] (1985)); <u>Ex parte Young</u>, 209 U.S. 123, 159-60 [] (1908); *see* <u>Edwards</u>, 49 F.3d at 1524. Further, "the Eleventh Amendment does not prohibit a plaintiff from suing state officials in their official capacities for prospective injunctive relief." <u>Stevens</u>, 864 F.2d at 115. Thus, Warden Sikes in his official capacity is a suable defendant in Miller's § 1983 claims for injunctive relief.

384 F.3d at 1259-60. *See also*, <u>Williams v. Bennett</u>, 689 F.2d 1370, 1376 (11th Cir. 1982),

*cert. denied* 464 U.S. 932 (1983)(the Eleventh Amendment "effectively bars [] actions for monetary relief . . . [i]f the judgment necessarily will be paid from the state treasury, and the state is the real party in interest,[even when the state is not named as a party].").  For this reason, any claim asserted by Griggs against Defendant Patterson in his official capacity is barred by Eleventh Amendment immunity and due to be dismissed.

E.      *Defendant is entitled to Qualified Immunity.*

To the extent Defendant Patterson has been sued in his individual capacity, he is also entitled to qualified immunity.  Qualified immunity is not just a bar to damages; it is a bar to suit. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The basic test for qualified immunity was stated in Harlow v. Fitzgerald, 457 U.S. 800 (1982):

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818.  Qualified immunity bars claims "as long as [the defendant's] actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987).  Even allegations of animus by a state actor against a plaintiff are not sufficient to overcome the presumption of qualified immunity. *See* Hansen v. Soldenwagner, 19 F.3d 573, 578 (11th Cir. 1994) ("For qualified immunity purposes, the subjective motivation of the defendant-official is immaterial.").

In this case, Patterson has asserted the defense of qualified immunity and has shown that he was acting within his discretionary capacity.  The threshold inquiry this court must undertake is, therefore, whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [Patterson's] conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001), *citing* Siegert v. Gilley, 500 U.S. 226, 232 (1991).  The burden is on

Griggs to show that Patterson has violated a clearly established right. Travers v. Jones, 323 F.3d 1294, 1295 (11th Cir. 2003) ("Once the defendants established that they were acting within their discretionary authority, a point not in dispute here, the burden shifted to the plaintiff to show that qualified immunity is inappropriate.").

Griggs has neither alleged any specific injuries he sustained or is likely to sustain in the near future nor alleged any specific action or inaction by Defendant Patterson that could be construed as causing inhuman treatment or injury to Griggs personally. Further, Griggs has failed to offer anything to support a claim of deliberate indifference, which is a requisite of an Eighth Amendment claim. Consequently, Griggs cannot demonstrate that any of his clearly established constitutional rights were infringed by Defendant Patterson, and his §1983 claims are, therefore, barred by qualified immunity and due to be dismissed.

F.   *Punitive damages claim is barred by the Prison Litigation Reform Act (PLRA).*

Griggs is seeking $10,000,000 in punitive damages. He claims no compensatory damages and does not quantify any damage he has suffered. Under the PLRA, he cannot recover damages without a physical injury that is more than *de minimis*. *See* 42 U.S.C.A. § 1997e (e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312 -13 (11th Cir. 2002) ("In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*."); Holifield v. Mobile County Sheriff's Dept. of Mobile County, Ala., 2008 WL 2246961 at * 3 S.D. Ala. 2008) (same). Griggs alleges no injury (doc. 1) and is, therefore, barred from seeking monetary damages.

G.    *Declaratory and Injunctive Relief is Unavailable.*

Griggs has also failed to show any entitlement to either declaratory or injunctive relief in

this case.  The Supreme Court has held:

> '(T)he federal courts established pursuant to Article III of the Constitution do not
> render advisory opinions. For adjudication of constitutional issues 'concrete legal
> issues, presented in actual cases, not abstractions' are requisite. This is as true of
> declaratory judgments as any other field.' United Public Workers of American
> (C.I.O.) v. Mitchell, 330 U.S. 75, 89 [] (1947). 'The difference between an
> abstract question and a 'controversy' contemplated by the Declaratory Judgment
> Act is necessarily one of degree, and it would be difficult, if it would be possible,
> to fashion a precise test for determining in every case whether there is such a
> controversy. Basically, the question in each case is whether the facts alleged,
> under all the circumstances, show that there is a substantial controversy, between
> parties having adverse legal interests, of sufficient immediacy [] to warrant the
> issuance of a declaratory judgment.' Maryland Casualty Co. v. Pacific Coal & Oil
> Co., 312 U.S. 270, 273 [] (1941).

Golden v. Zwickler, 394 U.S. 103, 108 (1969).  *See also*, City of Los Angeles v. Lyons, 461 U.S.

95, 101-102 (1983)(" Abstract injury is not enough. The plaintiff must show that he "has

sustained or is immediately in danger of sustaining some direct injury" as the result of the

challenged official conduct and the injury or threat of injury must be both "real and immediate,"

not "conjectural" or "hypothetical.").  The Eleventh Circuit has described the standard as

follows:

> Consistent with the "cases" and "controversies" requirement of Article III, the
> Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that a
> declaratory judgment may be issued only in the case of an "actual controversy."
> *See* Emory v. Peeler, 756 F.2d 1547, 1551–52 (11th Cir. 1985). Based on the facts
> alleged, there must be a substantial continuing controversy between two adverse
> parties. *Id*. at 1552. "The plaintiff must allege facts from which the continuation
> of the dispute may be reasonably inferred. Additionally, the continuing
> controversy may not be conjectural, hypothetical, or contingent; it must be real
> and immediate, and create a definite, rather than speculative threat of future
> injury." *Id*. (internal quotations omitted).
>
> Thus, in order for this Court to have jurisdiction to issue a declaratory judgment,
> . . . [plaintiffs] must assert a reasonable expectation that the injury they have
> suffered will continue or will be repeated in the future. *See* Emory, 756 F.2d at

1552. "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Id.* Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1347 (11th Cir. 1999). See also, Castaneira v. Perdue, 2010 WL 5115193, *2 (N.D. Ga. December 09, 2010)("The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments."), *quoting* Malowney, 193 F.3d at 1347. In this case, Griggs has alleged no actual personal injury and has failed to establish, or even assert, that he is likely to be injured in the future. Declaratory relief is, therefore, unavailable to Griggs.

Although Griggs states that he seeks injunctive relief, he has not requested any specific injunction. The Eleventh Circuit has summarized the plaintiff's burden with respect to a request for injunctive relief as follows:

> To obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest. KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006); Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1128 (11th Cir. 2005). In addition to ensuring that injunctive relief was necessary under this standard, we must also ensure that the scope of the awarded relief does not exceed the identified harm. Califano v. Yamasaki, 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979) ("[T]he scope of injunctive*1318 relief is dictated by the extent of the violation established ...."); LaMarca [v. Turner], 995 F.2d [1526,] 1543 [(11th Cir. 1993)] ("While district courts have broad discretion to fashion equitable relief, such relief must target the existing wrong."). In the context of prison litigation, we must also consider the requirements of the Prison Litigation Reform Act, 18 U.S.C. § 3626 ("PLRA"), which "establishes standards for the entry and termination of prospective relief in civil actions challenging prison conditions," Miller v. French, 530 U.S. 327, 331 [] (2000). The PLRA mandates that injunctive relief is only appropriate where it is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Thomas v. Bryant, 614 F.3d 1288, 1317-18 (11th Cir. 2010). In this case, Griggs has failed to establish a constitutional violation and has failed to allege that he has suffered any injury, much

less irreparable injury, due to the prison conditions at Holman. He has also failed to establish, or even assert, that he is likely to be injured in the future. *See e.g.*, <u>C.T. ex rel. Beason v. Bentley</u>, 2013 WL 5231955, *6 (M.D. Ala. September 16, 2013)(" When the plaintiff seeks injunctive relief, as in this case, she 'must allege facts from which it appears there is a substantial likelihood that [s]he will suffer injury in the future'."). Consequently, no injunctive relief is appropriate or available in this case.

CONCLUSION

For the reasons stated above, it is recommended that defendant's motion for summary judgment be granted and that judgment be entered in favor of the defendant, Tony Patterson, and against the plaintiff, Arthur Griggs, the plaintiff to have and recover nothing of this defendant.

**Notice of Right to File Objections**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this   5th   day of March, 2014.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**